**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN HALGREN, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 21-cv-5039** |
| | ) | |
| **CITY OF NAPERVILLE, et al.,** | ) | **Judge John Robert Blakey** |
| | ) | |
| **Defendants.** | ) | |

<u>**DEFENDANT EDWARD-ELMHURST HEALTHCARE'S OPPOSITION TO PETITION**</u>
<u>**FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION**</u>

Defendant Edward-Elmhurst Healthcare ("EEH"), by and through its undersigned Counsel, in opposition to Plaintiffs' Petition for Temporary Restraining Order or Preliminary Injunction (Dkt. 4) (the "Petition"), states as follows:

Plaintiffs seek to enjoin the City of Naperville ("Naperville"), Governor Jay Robert Pritzker (the "Governor"), and EEH from enforcing a COVID-19 vaccine and testing mandate against them. But EEH should not be enjoined from anything, for two main reasons. First and foremost, EEH is not a correct party – it did not issue and has no authority to issue or require the vaccine and testing requirements of which Plaintiffs complain. Second, even if EEH was a proper Defendant, Plaintiffs cannot overcome the high bar they face in challenging a vaccination mandate on constitutional grounds. Because of these two infirmities in the Petition, Plaintiffs cannot show a likelihood of success on the merits, and the Petition should be denied.

**INTRODUCTION**

At the outset, EEH notes that it is filing this Opposition on an emergency basis. The docket in this case reflects that the Petition is set for presentment on October 7, 2021 (Dkt. 5) and that the September 30, 2021 hearing is a status hearing (Dkt. 7). On September 28, 2021, counsel for EEH

called the Court's courtroom deputy and was informed that the hearing would likely proceed on the Petition. EEH submits this Opposition to demonstrate that there are significant obstacles to the granting of the relief Plaintiffs seek; however, if the Court intends to request further briefing or evidentiary submissions from the parties, EEH respectfully requests that it be allowed to make further submissions at that time.

As stated above, Plaintiffs are unlikely to succeed on the merits as to EEH for two reasons – that EEH is not one of the parties causing the alleged harms, and that Plaintiffs are not likely to succeed in challenging the vaccine and testing mandates on constitutional grounds. EEH relies primarily on the first of these grounds for its Opposition. The mandates at issue are Naperville's and the Governor's, and EEH trusts that they will defend them fully on the merits.

But before turning to EEH's chief argument, it is important to note that the Petition, as drafted, ignores and misstates the applicable law. The Petition claims that strict scrutiny is the appropriate standard for Plaintiffs' challenge. Dkt. 4, p. 6. But the Seventh Circuit Court of Appeals, less than two months ago, ruled in *Klaassen v. Trustees of Indiana University,* 7 F. 4th 592, 593 (7th Cir. 2021), that the Supreme Court's decision in *Jacobson v. Massachusetts*, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905) remains good law, and establishes that the standard for review of COVID-19 and other vaccination mandates is rational basis.[1]

Moreover, the Seventh Circuit, in *Klaassen*, casts significant doubt on the viability of any challenge such as Plaintiffs': "Given *Jacobson* … which holds that a state may require all members

---

[1] Plaintiffs omit any discussion of this binding adverse precedent from their Petition, in spite of the fact that they cite to the District Court opinion in *Klaassen* three times. *See* Petition, pp. 9, 10, and 13.

of the public to be vaccinated against smallpox, there can't be a constitutional problem with vaccination against SARS-Cov-2." *Klaassen,* 7 F. 4th at 593.[2]

At hearing on this matter, Plaintiffs should account for how they think they may overcome this binding precedent, which they have disregarded. And given that a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion," *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (emphasis in original; internal citations omitted), it is unclear how Plaintiffs could possibly carry that burden when they have simply failed to argue as to the correct legal standard.

## BACKGROUND

The facts of the COVID-19 pandemic are hardly unknown to the Court, and are well recounted in the Governor's September 3, 2021 Executive Order 2021-22 (COVID-19 Executive Order No. 88), a copy of which is attached to the Complaint as Exhibit A. Dkt. 1, pp. 15-22. In brief, between March 2020 and September 2021, the COVID-19 pandemic resulted in more than 1,538,000 infections and 24,000 deaths in Illinois alone. *Id.* The Delta variant of SARS-CoV-2 has become the dominant strain of the virus in Illinois and the United States in general. *Id.* That variant is more transmissible and may cause more severe disease than prior strains of the virus. *Id.* Increased COVID-19 cases due to the Delta variant have resulted in increased numbers of hospitalizations, and decreased availability of ICU beds, in Illinois. *Id.; see also Streight v. Pritzker*, No. 21-cv-50339 (N.D. Il., September 22, 2021).

---

[2] SARS-CoV-2 is the name of the virus that causes COVID-19; COVID-19 is the name of the disease caused by the virus. *See* "Johns Hopkins ABX Guide, Coronavirus COVID-19 (SARS-CoV-2)", Paul G. Auwerter, M.D. August 19, 2021, *available at* https://www.hopkinsguides.com/hopkins/view/Johns_Hopkins_ABX_Guide/540747/all/Coronavirus_COVID_19__SARS_CoV_2 (last visited September 28, 2021).

Thankfully, safe and effective vaccines exist for COVID-19, and are available free of cost to any Illinois resident 12 or over. *Id.* at p. 16. Further, vaccinating healthcare workers can prevent outbreaks and reduce transmission to vulnerable people. *Id.* Accordingly, on September 3 2021, the Governor issued EO 2021-22, which requires, *inter alia*, "Health Care Workers," as defined in the order, to have received at least one dose of a COVID-19 vaccine by September 19, 2021 or submit to weekly testing. *Id.* pp. 17-18. The vaccination requirement (but not the testing requirement) contains exemptions for persons for whom vaccination is medically contraindicated or who have sincerely held religious beliefs against receiving the vaccine. *Id.* at p. 18.

Edward Hospital's Medical Director of EMS, Daryl D. Wilson, M.D., has certain responsibilities with respect to local EMS under the Illinois Emergency Medical Services Act ("IEMSA"), 210 ILCS 50, *et seq.* In short, under that Act, he oversees the pre-hospital care of patients attended to by EMS personnel working with Edward Hospital. Further to that responsibility, on August 31, 2021, Dr. Wilson wrote a letter to various EMS services, including the Naperville Fire Department, explaining why EMS personnel should get vaccinated – to protect themselves, and more importantly, to reduce the likelihood that they will sicken their patients. Wilson Aff., Ex. 1 and par. 5.

On September 8, 2021, a meeting was held between Edward EMS personnel and local fire chiefs. After this meeting, Edward Hospital personnel emailed local fire departments, requesting that lists of their employees who were vaccinated and unvaccinated, and information about whether their unvaccinated employees were in compliance with testing requirements under EO 2021-22 as of September 19, 2021 be provided to Edward. *Id.,* Ex. 2. At no time did Dr. Wilson, or any Edward Hospital or EEH personnel, direct or require the Naperville Fire Department (or

any other) to implement a COVID-19 vaccine or testing requirement for their personnel. *Id.* at par. 8.

**ARGUMENT**

Plaintiffs seek a preliminary injunction against EEH and the other named defendants in this matter. In order to obtain such an injunction, they must make a "strong showing" of likelihood of success on the merits. *Tully v. Okeson,* 977 F.3d 608, 613 (7th Cir. 2020). The failure to do so is dispositive and their Petition should be denied.

"A preliminary injunction is an extraordinary remedy." *Tully v. Okeson*, 977 F.3d 608, 612 (7th Cir. 2020) (quoting *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017)). A party seeking a preliminary injunction must establish two preliminary elements: "(1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied." *Cassell v. Snyders*, 990 F.3d 539, 544-45 (7th Cir. 2021). If these two preliminary threshold elements are satisfied, the Court "must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992).

The Seventh Circuit Court of Appeals has referred to these factors, taken together, as "a sliding scale approach" – the more likely a plaintiff is to win, the less the plaintiff needs to balance the harms in his or her favor; the less likely they are to win, the more they need the balance of harms to weigh in their favor. *Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021). This balancing should include not just the effects on the parties, but on the public as well. *Id.*

5

Plaintiffs fail in this case because they cannot meet even the first of the factors – likelihood of success on the merits. Absent any showing of likelihood of success, they cannot proceed to the balancing test. As to EEH, Plaintiffs fail to show likelihood of success because EEH is not a proper defendant and the conclusory and deficient allegations relating to EEH fail to state a claim.

Even assuming Plaintiffs could allege an actual constitutional violation, EEH is not the source of that violation. EEH has done nothing that would warrant or allow an order enjoining it. For that reason, Plaintiffs cannot obtain an injunction against EEH. The Complaint fails to state a claim against EEH, but even if it did, the accompanying evidentiary support demonstrates that the Plaintiffs cannot succeed on the merits against EEH.

## I.     The Complaint fails to state a claim against EEH

Where the Complaint fails to state a claim against a party, a preliminary injunction should not issue – a Plaintiff who cannot state a claim cannot demonstrate likelihood of success on the merits. *See Artist M. v. Johnson*, 917 F.2d 980, 986 (7th Cir. 1990), *rev'd on other grounds sub nom. Suter v. Artist M.*, 503 U.S. 347, 112 S. Ct. 1360, 118 L. Ed. 2d 1 (1992) (evaluating whether Complaint stated a claim on which relief could be granted in determining likelihood of success); *Lake Maum Meditation House of Truth v. Lake Cty.*, Illinois, 55 F. Supp. 3d 1081, 1090 (N.D. Ill. 2014) (dismissal for failure to state a claim compels finding that plaintiff is unlikely to succeed on the merits).

A Complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations "must be enough to raise a right to relief above the speculative level," or

"contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (alterations and internal quotation marks omitted). A complaint is insufficient when "it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (alteration and internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Importantly, regardless of the elements of the underlying claims, a Complaint must allege facts that link Defendants to harms suffered by the Plaintiffs. *See In re Afr.-Am. Slave Descendants Litig.*, 304 F. Supp. 2d 1027, 1065 (N.D. Ill. 2004)

Here, the Complaint does not provide sufficient factual allegations to link EEH to the COVID-19 vaccination and testing policy Plaintiffs complain of. Exactly three paragraphs of the Complaint reference EEH; one more references the duties of an EMS medical director. They are reproduced below in their entirety:

> 6.    Edward-Elmhurst Healthcare operates a hospital in Naperville, Illinois, which is located in the Northern District of Illinois. Daryl Wilson, who works for Edward-Elmhurst, supervises the interaction between Edward-Elmhurst Healthcare and the EMS services provided by Naperville Fire Department. He does this in his role as an EMS Medical Director under 210 ILCS 50 *et seq.*

> 34.    Illinois statute gives an EMS Medical Director may suspend any EMS personnel, but provides that they must first be given a hearing before the local system review board. 210 ILCS 50/3.40.

38.    The mandate claims that Naperville was directed to put these requirements in place by Edward-Elmhurst Healthcare.

39.    Inasmuch as the mandate points to Edward-Elmhurst as the initiator (by virtue of its relationship with the Naperville Fire Department, and by virtue of Daryl Wilson's role as EMS Medical Director over Naperville's paramedics), Edward-Elmhurst's actions in the context of this matter were taken under color of law.

Based on the above, Plaintiffs' Complaint alleges that EEH is a proper party because it "directed" Naperville to issue a vaccination mandate[3] and because Dr. Wilson has some authority to "supervise the interaction between Edward-Elmhurst Healthcare and the EMS services provided by Naperville Fire Department." But the cited statute, 210 ILCS 50 *et seq*., provides no authority for an EMS Medical Director to issue a binding directive to mandate vaccinations by a fire department or City, and the Complaint does not provide any explanation. Nor does the Complaint explain how the EMS medical director's power to suspend EMS personnel is related to the punishment (administrative leave without pay) specified in Naperville's mandate. Complaint, par. 36.

Simply put, the facts as stated in the Complaint fail to provide any causal link between EEH and the alleged harms suffered by Plaintiffs. The Complaint therefore fails to state a claim against EEH; and because they fail to state a claim against EEH, Plaintiffs cannot show any likelihood of success on the merits as to EEH.[4]

---

[3] Paragraph 38 of the Complaint contradicts Paragraph 35 of the Complaint, which alleges that the Naperville mandate was issued "ostensibly in response to" EO 2021-22.

[4] EEH intends to move to dismiss the Complaint on these grounds.

## II.     Even if the Complaint did state a claim, the facts before the Court demonstrate EEH should not be enjoined

Even if the factual allegations in the Complaint were deemed sufficient to state a claim upon which relief can be granted, the evidence before the Court demonstrates that EEH did not, in fact, impose any requirement or binding directive on Naperville to issue the mandate or requirement at issue in this case. In evaluating whether to issue a preliminary injunction, the Court must weigh all relevant evidence. *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1188 (7th Cir. 1989); *De Mauro v. Loren-Maltese,* No. 98 C 8318, 2000 WL 116079, at *6 (N.D. Ill. Jan. 24, 2000).

Plaintiffs, in their Petition, offer no argument or support for their claim that EEH is in some way involved in this case that is not contained in their Complaint. The affidavits attached to the Complaint all contain the same rote recitation as to EEH: "The explanation that was given to me by City of Naperville was that Edward-Elmhurst Hospital was requiring this pursuant to EO 2021-22."[5]

In contrast, EEH has filed herewith the Affidavit of Dr. Daryl D. Wilson; unlike Plaintiffs, his affidavit is on personal knowledge and is supported by documentation. And the affidavit and the documentation attached thereto show the following:

a) Dr. Wilson recommended, reasonably, that EMS personnel (including Plaintiffs) get vaccinated to protect themselves and others. Wilson Aff. Ex. 1, pars. 4-5.

b) EEH requested local EMS services, including the Naperville Fire Department, to provide it with information on whether their employees were vaccinated and whether they were complying with EO 2021-22. Wilson Aff. pars 6-7.

---

[5] Petition, Dkt. 4, Ex. B, pp. 26-31. The quoted statement is paragraph 7 of each affidavit attached to the Petition.

c)  Neither Dr. Wilson nor any other EEH employee required any external party to implement any COVID-19 vaccination or testing requirement. Wilson Aff. pars. 7-8.

In light of the foregoing, even if the Complaint did state a causal connection between Plaintiffs' alleged harms and EEH, the evidence before the Court demonstrates that Plaintiffs are mistaken or misinformed and no such connection actually exists.

## CONCLUSION

A preliminary injunction is a form of extraordinary relief, not to be granted lightly. Plaintiffs have fallen far short of the standard. EEH is not a proper party for any injunction. EEH respectfully requests the Court deny the Petition.

/s/ Patrick S. Coffey
Patrick S. Coffey, No. 6188134
Robert M. Romashko, No. 6293659
Husch Blackwell, LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
Telephone:  (312) 655-1500
Facsimile:  (312) 655-1501
patrick.coffey@huschblackwell.com
robert.romashko@huschblackwell.com
*Attorneys for Defendant Edward-Elmhurst Health*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 29, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Patrick S. Coffey       
Patrick S. Coffey
